UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | CASE NO. 15-10380 |
| ) | |
| ERIE HOCKEY CLUB LIMITED, ) | |
|     Debtor. ) | |
| ) | |
| ) | CHAPTER 11 |
| ERIE HOCKEY CLUB LIMITED, ) | |
|     Movant, ) | |
| ) | Related to Document No. _____ |
|         v. ) | |
| ) | |
| ONTARIO MAJOR JUNIOR HOCKEY ) | |
| CORPORATION, ) | |
|     Respondent. ) | JUDGE AGRESTI |
| ) | |

**MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL**

Erie Hockey Club Limited (the "Debtor"), by and through its undersigned counsel, hereby files this *Motion for Order Authorizing Use of Cash Collateral* (the "Motion"). In support of the Motion, the Debtor states as follows:

**I.    PARTIES**

1.    The Debtor is a Pennsylvania limited liability company with an address of 201 East 8th Street, Erie, Pennsylvania 16503.

2.    Respondent, Ontario Major Junior Hockey Corporation ("OMJHC") is a Canadian Corporation with a principal place of business located at 11230 - 110 Street, Edmonton, Alberta T5G 3H7, Attention: Patrick LaForge.

3.    OMJHC is represented by Samuel Grego, Esquire, Dickie McCamey & Chilcote, Two PPG Place, Suite 400, Pittsburgh, Pennsylvania 15222-5402, Robert Richards, Esquire, Dentons US LLP, 233 S. Wacker Drive, Suite 7800, Chicago, Illinois 60606 and Shawna Vogel,

Esquire, Dentons Canada, LLP, 2900 Manulife Place, 10180 - 101 Street, Edmonton, Alberta T5J 3V5.

## II. JURISDICTION AND VENUE

4. On April 8, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. To date, no official committees have been appointed or designated.

8. This Motion is filed pursuant to the provisions of 11 U.S.C. § 363.

## II. FACTUAL BACKGROUND

### A. The Loan and Loan Documents

9. The Debtor owns and operates the Erie Otters Hockey Club franchise, which is a member of the Ontario Hockey League (the "Team").

10. Upon information and belief, OMJHC is wholly owned by Rexall Sports Corporation, which also owns the Edmonton Oilers hockey team, a member of the National Hockey League ("NHL").

11. OMJHC is the Debtor's primary secured lender and asserts a security interest in "all assets" of the Debtor.

12. In 2011, the Debtor was having financial difficulty and required additional capital to continue operations.

13.     On December 29, 2011, OMJHC (as Lender), Bassin Hockey, Inc. ("BHI")[1] (as Borrower), the Debtor (as Subsidiary) and Sherwood Bassin (as Principal) entered into a Master Agreement pursuant to which OMJHC made advances totaling $4,211,796.00 to BHI (the "Loans"), which advances were guaranteed by the Debtor.  A copy of the Master Agreement is attached hereto as Exhibit "A" and is incorporated herein by reference.

14.     Pursuant to paragraph 2.4(a) of the Master Agreement, the Loans were to be repaid "by set-off of the same against any funds payable by the Lender under the Asset Purchase Agreement."

15.     Pursuant to paragraph 2 of the Asset Purchase Agreement (the "APA"), OMJHC was to purchase the Team for in excess of $6,250,000.

16.     If the Loans were not repaid through the acquisition of the Team by OMJHC, which they were not, the Loans were to be repaid through the sale of the Team to a third-party.

17.     BHI executed the following Demand Promissory Notes to OMJHC in exchange for the advances:

| Date | Amount |
|---|---|
| December 29, 2011 | $3,500,000.00 |
| December 29, 2011 | $145,585.00 |
| August 30, 2012 | $203,763.00 |
| August 30, 2012 | $53,660.00 |
| December 3, 2012 | $53,660.00 |
| May 14, 2013 | $255,128.00 |
| Total: | **$4,211,796.00** |

---

[1] BHI owns 100% of the Debtor, and Mr. Bassin owns 100% of BHI.

18. A portion of the Loan proceeds were used by BHI to acquire 100% ownership of the Debtor, and a portion of the proceeds (approximately $2,760,000) were loaned by BHI to the Debtor to pay debts and fund operations.

19. In connection with the Master Agreement, the Debtor executed a Guaranty and Suretyship Agreement (the "Guaranty") dated December 29, 2011 in favor of the Lender, pursuant to which the Debtor guaranteed the Loan in the principal amount of $3,500,000.00. A copy of the Guaranty is attached hereto as Exhibit "B" and is incorporated herein by reference.

20. The Debtor believes that a Security Agreement granting OMJHC a lien on substantially all of the Debtor's assets was also executed in connection with the Master Agreement and the Guaranty, but the Debtor does not have an executed copy of the same.

21. On December 14, 2011, OMJHC filed a UCC-1 financing statement against "All of the Debtor's assets" with the Pennsylvania Secretary of State at File No. 2011121501584.

**B.     The Alleged Defaults, Confessed Judgments and Article 9 Sale**

22. OMJHC did not acquire the Team and, on June 30, 2013, it made a demand for repayment and a demand that the Team be sold in order to pay the Loans.

23. Since the June 30, 2013 demand letter, the Debtor has attempted to sell the Team in accordance with its obligations under the Master Agreement.

24. Since the June 30, 2013 demand letter, the Debtor, BHI and the Principal have had a series of communications with OMJHC and its counsel regarding the alleged breaches under the terms of the Loans, and OMJHC and its principal have conducted themselves in a way that the Debtor, BHI and the Principal believe subjects them to breach of contract, lender

liability and other claims and which will likely give rise to an objection and counterclaim to OMJHC's claim in this case.

25. On November 12, 2014, OMJHC filed a *Complaint for Confession of Judgment for Money* against the Debtor seeking a confessed judgment in the amount of $4,665,332.07, in the United States District Court for the Western District of Pennsylvania, Case No. 1:14-mc-00022(DSC).

26. Simultaneously, OMJHC filed a substantially similar *Complaint for Confession of Judgment for Money* against BHI seeking a confessed judgment in the amount of $4,665,332.07, in the United States District Court for the Western District of Pennsylvania, Case No. 1:14-mc-00021(DSC).

27. As set forth in the BHI complaint, OMJHC's claim was comprised of the following:

| Principal: | $4,211,796.00 |
|---|---|
| Interest through November 11, 2014: | $231,377.40 |
| Attorneys' Fees and Costs through October 2014: | $69,908.20 |
| **Total:** | **$4,513,081.60**[2] |

28. On November 13, 2014, the District Court Clerk entered judgments against the Debtor in the amount of $4,665,332.07 and BHI in the amount of $4,513,081.60.

29. On November 28, 2014, the Debtor and BHI filed a *Motion to Open and/or Strike Confessed Judgment and Counterclaims* and a brief in support.

30. On December 1, 2014, Judge Cercone entered Orders vacating the Clerk's entry of judgment and dismissing the complaints without prejudice.

---

[2] The complaint filed against and the judgment entered against the Debtor totaled $4,665,332.07 because the complaint claimed "Attorneys' Fees of 5% of Amount Due", totaling $222,158.67 allegedly based on the warrant, rather than what appears to be the actual amount of fees and costs alleged to have been incurred by OMJHC through October 2014.

31. On December 2, 2014, OMJHC filed a motion for reconsideration or clarification of the Court's Orders, and on December 3, 2014, the Court entered an Order denying the motion for reconsideration.

32. On February 9, 2015, OMJHC issued another default letter to the Debtor and BHI alleging various defaults under the terms of the Loans and indicating that OMJHC was scheduling a sale of the Debtor's assets pursuant to Article 9 of the Pennsylvania Uniform Commercial Code for April 8, 2015 at 11:00 a.m. Attached to that letter is a *Notice of Public Sale of Assets of Erie Hockey Club Limited Under the Uniform Commercial Code* (the "Article 9 Sale Notice"). A true and correct copy of OMJHC's February 9, 2015 letter and the Article 9 Sale Notice are attached hereto as Exhibit "C", and are incorporated herein by reference.

33. OMJHC advertised the Article 9 Sale in the Wall Street Journal and the Toronto Globe and Mail on February 11, 2015.

34. On February 22, 2015, counsel for the Debtor sent counsel for OMJHC a letter demanding that the Article 9 Sale be cancelled because it is not commercially reasonable, because it is a sham designed to minimize rather than maximize the proceeds of the collateral and because it would constitute a breach of OMJHC's fiduciary duty. A true and correct copy of the February 22, 2015 letter is attached hereto as Exhibit "D", and is incorporated herein by reference.

35. On February 25, 2015, counsel for OMJHC sent counsel for the Debtor a letter in response asserting, *inter alia*, that the Article 9 Sale is commercially reasonable because potential bidders can gain sufficient information about the Team in order to make a multi-million dollar offer from publicly available information. In that letter, OMJHC also refuses to

cancel the sale.  A true and correct copy of the February 25, 2015 letter is attached hereto as Exhibit "E", and is incorporated herein by reference.

36. In addition to counsel's request that OMJHC cancel the Article 9 Sale, the Debtor's broker, Game Plan Special Services LLC ("Game Plan"), also made several requests for a cancellation or delay, all of which were denied except on terms that were unreasonable and unworkable.

37. The filing of this case was precipitated by the Article 9 Sale.

38. The Debtor has been marketing the Team for sale for over a year, and engaged Game Plan to manage the process in December 2014.

39. Despite the Debtor's efforts, several requests and the significant progress that Game Plan has made toward achieving a sale, OMJHC has refused to cancel or delay the Article 9 Sale except on terms that are unreasonable and unworkable.

40. Although the Debtor could have closed on a sale through Game Plan without a chapter 11 filing, OMJHC's actions prevented that from happening and forced the Debtor into bankruptcy in order to maximize the value of its assets.

41. Prior to filing, potential bidders expressed an interest in acquiring the Team for prices that ranged from $7 million (USD) to $8 million (USD).

42. One of the Debtor's first day motions in this case is an Application to Employ Game Plan as the Debtor's broker to complete the marketing process and to sell the Team to the bidder with the highest and best offer.

43. Based on the expressions of interest Game Plan has received from potential buyers, as well as its experience and expertise of Game Plan, and the results of several recent sales of other OHL teams, the Debtor believes that the value of the Team is almost twice the

amount of the debt allegedly owed to OMJHC (approximately $4,700,000), even before an objection and counterclaims to its eventual claim are filed.

## II. **RELIEF REQUESTED**

44. By this Motion, the Debtor seeks authority to use its Cash Collateral, as defined in 11 U.S.C. § 363(a), in order to pay the costs of administration of this case and to pay operating expenses, including payroll and vendors to ensure the Debtor's continued viability and to maximize the value of the estate for the benefit of all creditors.

45. Pursuant to 11 U.S.C. § 363, the Debtor is not permitted to use the Cash Collateral of OMJHC unless:

> A. Each entity that has an interest in such cash collateral consents, or
>
> B. The court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

46. Through this bankruptcy proceeding, the Debtor intends to sell the Team with the assistance of Game Plan and to pay creditors from the proceeds of that sale.

47. An organized sale process will maximize the value of the Debtor's estate for the benefit of all creditors, including OMJHC.

48. The continuation of the Debtor's operations in the ordinary course will prevent a diminution in value of the Debtor's primary asset, the Team.

49. The Debtor requires use of Cash Collateral in order to pay operating expenses and the cost of administration of this case. A short-term budget and forecast showing the Debtor's proposed use of Cash Collateral is attached hereto as Exhibit "F".

Case 15-10380-TPA  Doc 5  Filed 04/08/15  Entered 04/08/15 09:23:21  Desc Main
Document      Page 9 of 10

50. The Bankruptcy Code does not explicitly define "adequate protection," but does provide a nonexclusive list of the means by which a debtor-in-possession may provide adequate protection, including (i) periodic cash payments, (ii) additional or replacement liens, or (iii) other relief resulting in the "indubitable equivalent" of the secured creditor's interest in such property. 11 U.S.C. § 361.

51. Because the value of the Team is far in excess of the amount due to OMJHC, there is a significant amount of equity in the collateral and the Debtor does not believe that any adequate protection payments should be made.

52. The Debtor intends to sell the Team in the near future through a Court approved sale process and the cash proceeds from that sale will be distributed upon further order of court.

53. As set forth in the proposed order attached hereto, unless and until an Order is entered to the contrary, OMJHC will retain its liens on the Debtor's postpetition assets to the same extent and in the same priority they were pre-petition. When a sale of the Team occurs, OMJHC's liens will transfer to the cash proceeds to the same extent and in the same priority they were pre-petition.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order, in substantially the form attached hereto, authorizing the use of Cash Collateral in accordance with the terms of the Budget, and granting such further relief as is just and proper.

Dated:  April 8, 2015

           Respectfully submitted,

           */s/ Nicholas R. Pagliari*
           James R. Walczak
           jwalczak@mijb.com
           PA Supreme Court ID No. 26028
           Nicholas R. Pagliari
           PA Supreme Court ID No. 87877
           MacDONALD, ILLIG, JONES & BRITTON LLP
           100 State Street, Suite 700
           Erie, Pennsylvania 16507-1459
           (814) 870-7754
           FAX (814) 454-4647
           npagliari@mijb.com

           *Proposed Counsel for Debtor*

#1422064