UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | ) CASE NO. 15-10380(TPA) |
| | ) |
| ERIE HOCKEY CLUB LIMITED, | ) CHAPTER 11 |
|    Debtor. | ) |
| _____ | ) |
| | ) |
| ERIE HOCKEY CLUB LIMITED, | ) Related to Document No. _____ |
|    Movant, | ) |
| | ) HEARING DATE AND TIME: |
|        v. | ) May 7, 2015 at 9:30 a.m. |
| | ) |
| NO RESPONDENT. | ) RESPONSE DATE: |
| _____ | ) April 27, 2015 |

**APPLICATION TO EMPLOY GAME PLAN SPECIAL SERVICES LLC
AS DEBTOR'S BROKER**

The Debtor, Erie Hockey Club Limited (the "Debtor"), hereby submits this Application (the "Application") for an order pursuant to Sections 327 and 328 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure, authorizing the employment and retention of Game Plan Special Services LLC ("Game Plan") as the broker for the Debtor. In further support of this Application, the Debtor avers as follows:

**I.      JURISDICTION AND FACTUAL BACKGROUND**

1. The Debtor is a Pennsylvania limited liability company with an address of 201 East 8th Street, Erie, Pennsylvania 16503.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. On April 8, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The

Debtor is operating its business and managing its property as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. To date, no official committees have been appointed or designated.

5. The filing of the Debtor's case was precipitated by a threatened and advertised sale of the Debtor's assets pursuant to Article 9 of the Pennsylvania Uniform Commercial Code on April 8, 2015 (the "Article 9 Sale") by Ontario Major Junior Hockey Corporation ("OMJHC"), the Debtor's primary secured lender. OMJHC advertised the Article 9 Sale in the Wall Street Journal and the Toronto Globe and Mail on February 11, 2015.

6. In an effort to avoid having to file this case, the Debtor, through both counsel and Game Plan, made several requests to OMJHC that the Article 9 Sale be cancelled and that the Game Plan process be allowed to proceed without interference. OMJHC refused to cancel or continue the sale except on terms that were unreasonable and unworkable.

7. The Debtor's primary asset is its franchise agreement with the Ontario Hockey League (the "OHL") for the Erie Otters hockey team (the "Team").

8. Based on the experience and expertise of Game Plan, and the results of several recent sales of other OHL teams, the Debtor believes that the value of the Erie Otters franchise is almost twice the amount of the debt allegedly owed to OMJHC (approximately $4,700,000), even before an objection to its eventual claim is filed.

## II. RELIEF REQUESTED

9. The Debtor has been marketing the Team for sale for over a year, and engaged Game Plan to manage the process in December 2014. A copy of the Debtor's engagement letter with Game Plan is attached hereto as Exhibit "A" (the "Engagement Letter").

10. Game Plan provides services to buyers, sellers, lenders, owners and investors in the professional sports industry. The company also provides services to professional sports leagues and to entertainment, facility management and event management companies. Game Plan has completed transactions involving teams in multiple professional sports leagues, including five transactions involving teams in the National Hockey League ("NHL"), one of which was the Pittsburgh Penguins. Game Plan also recently completed the sale of the Erie SeaWolves, so it is familiar with the local Erie market.

11. Game Plan's Chairman and co-founder, Robert L. Caporale, who was an attorney licensed to practice law in the Commonwealth of Massachusetts, has a significant amount of experience in the sports and entertainment field and with professional hockey in particular. By way of example, Mr. Caporale served as Alternate Governor to the NHL Board of Governors for the Pittsburgh Penguins and as a member of the Penguins' Advisory Board from November 1991 to January 1997; represented Pittsburgh Hockey Associates in connection with the acquisition of the Penguins in November 1991; represented the Hartford Whalers Hockey Club from the time of formation in 1971 until the sale of the club in 1994; representation of the Edmonton Oilers, New England Whalers, Quebec Nordiques and Winnipeg Jets in negotiations with the NHL, which resulted in the expansion of the NHL in 1979 to include those teams; and General Counsel to the World Hockey Association from June 1978 to June 1979. Rexall Sports Corporation, which is the current owner of the Edmonton Oilers and the owner of OMJHC, was not the owner of the Edmonton Oilers in 1979.

12. Since its engagement, Game Plan sent information to seventy-two parties advising that the Team was for sale, has received signed Non-Disclosure Agreements from

- 3 -

fifteen interested potential buyers and has given eleven of them access to an online database containing various pieces of due diligence information.

13. Despite the Debtor's efforts, several requests and the progress that Game Plan has made toward achieving a sale, OMJHC noticed and advertised the Article 9 Sale for April 8, 2015 and refused to cancel or delay the sale except on terms that were unreasonable and unworkable.

14. Although the Debtor could have closed on a sale through Game Plan without a chapter 11 filing, OMJHC's actions prevented that from happening and forced the Debtor into bankruptcy in order to maximize the value of its assets.

15. By this Application, the Debtor seeks to employ Game Plan as its broker to complete the sale process that it started in December 2014.

16. The Debtor selected Game Plan to serve as its broker because of its familiarity with the Debtor and the Team, its extensive amount of prepetition work to effectuate a sale and its extensive experience in marketing and selling sports franchises, including in the Erie, Pennsylvania market.

17. The Debtor wishes to employ Game Plan effective as of the Petition Date and to employ Game Plan on the terms set forth in the Engagement Letter.

18. As set forth more fully in the Engagement Letter, the proposed terms of Game Plan's compensation are as follows: (A) a $50,000 non-refundable retainer, which was paid in part by the Debtor ($24,180.33) and in part by Sherwood Bassin, the indirect owner of the Debtor ($25,819.67) in January and February 2015 which will be applied to and reduce any success fee; and (B) a success fee of five percent (5%) of the Total Gross Enterprise Value of the

Team upon sale of the Team, or a success fee of one percent (1%) of the amount of debt financing arranged by Game Plan for the Debtor.

19. Based on the foregoing, it is both reasonable and necessary to retain Game Plan as the Debtor's broker to continue marketing the Team for sale and, to the extent necessary:

- a. Review and analyze all pertinent business and financial information concerning the Team;
- b. Develop the marketing materials that describe the Team and the potential acquisition opportunity for presentation to prospective purchasers;
- c. Identify, contact and solicit interest from prospective purchasers;
- d. Evaluate the qualifications and interest of any prospective purchaser;
- e. Conduct negotiations on behalf of the Debtor with interested prospective purchasers;
- f. Advise the Debtor with respect to the proposed terms and conditions of any proposed sale of the Team;
- g. Assist potential purchasers in complying with all OHL requirements;
- h. If requested by the Debtor, assist the Debtor in arranging debt financing to replace the existing lender;
- i. If requested by the Debtor, provide the existing lender with updates on the process of the sale of the Team; and
- j. Monitor the Team sale process to completion including coordinating with the OHL and the Debtor in closing the sale of the Team.

20. Game Plan has stated its willingness and desire to act on behalf of the Debtor in this case and to render the necessary professional services as broker in accordance with the terms of the Engagement Letter (as set forth in the Verified Statement of Robert L. Caporale pursuant to Fed. R. Bankr. P. 2014(a) in Support of Application to Employ Broker (the "Verified Statement")).

21. The Debtor proposes to compensate Game Plan in accordance with the terms of the Engagement Letter, subject to the provisions of the Bankruptcy Code, Bankruptcy Rules and the local rules of this Court. The Debtor submits that the compensation arrangement set forth in the Engagement Letter is reasonable.

22.     Game Plan likewise intends to apply to the Court for compensation and reimbursement of expenses in accordance with terms of the Engagement Letter and the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the local rules of this Court, the guidelines established by the Office of the United States Trustee and any other procedures that may be established in this case for the compensation and reimbursement of professionals.

23.     Game Plan has informed the Debtor that, to the best of its knowledge and except as set forth in the Verified Statement, its owners and employees do not hold or represent any interest adverse to the Debtor's estate, and Game Plan is a "disinterested person" as defined in 11 U.S.C. § 101(14).

24.     The Debtor's knowledge, information and belief regarding the matters set forth herein are based, and made in reliance, upon the Verified Statement.

25.     No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests that the Court approve the retention of Game Plan Special Services LLC as the broker for the Debtor in accordance with the terms of the Engagement Letter and enter an Order authorizing the Debtor to retain and employ Game Plan Special Services LLC as of the Petition Date, and granting such further relief as is just and proper.

Dated: April 8, 2015

Respectfully submitted,

*/s/ Nicholas R. Pagliari*
James R. Walczak
jwalczak@mijb.com
PA Supreme Court ID No. 26028
Nicholas R. Pagliari
npagliari@mijb.com
PA Supreme Court ID No. 87877
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
Tel: (814) 870-7754
Fax: (814) 454-4647

*Proposed Counsel for Debtor*

#1434938