IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 15-10380 (TPA) |
| | : | |
| ERIE HOCKEY CLUB LIMITED, | : | CHAPTER 11 |
| | : | |
| | : | JUDGE AGRESTI |
| Debtor | : | |
| | : | |
| | : | Related to Document No. 103 |
| ONTARIO HOCKEY LEAGUE, | : | |
| Movant | : | |
| | : | |
| v. | : | |
| | : | |
| ERIE HOCKEY CLUB LIMITED, | : | |
| Respondent. | : | |
| | : | |

### REPORT OF ONTARIO HOCKEY LEAGUE

The Ontario Hockey League ("**OHL**" or "**League**") hereby submits this Report pursuant to an Order of this Court, dated May 7, 2015 [ECF No. 103] ("**Order**"), directing the OHL to file a report describing the League's approval process for the proposed sale of substantially all of the assets of the Erie Hockey Club Limited, LLC ("**Debtor**").

### Background

1.  On April 8, 2015 ("**Petition Date**"), the Debtor, along with its parent company Bassin Hockey, Inc. ("**Bassin Hockey**"), filed voluntary Chapter 11 cases in this Court. The Debtor owns and operates the Erie Otters Hockey Club ("**Team**"). The Debtor is a member of the OHL.

2.  The League is an incorporated association of its 20 hockey clubs ("**Clubs**"). The association is headquartered in Toronto, Ontario Canada. The value of any Club is entirely dependent on its membership in the League and its ability to compete with other Clubs in

scheduled hockey competitions as part of a jointly-produced hockey league product. Through the production and promotion of this product by the OHL, the Canadian Hockey League ("**CHL**"), and the other two leagues within the CHL, each Club derives potential benefits from broadcast and other revenues that are available only as a result of the Club's participation in this collective production.

3. For each Club and the League as a whole to succeed, it is essential that all Clubs adhere to and comply with the terms of the Constitution, Operating Manuals, regulations, policies and agreements. The OHL Constitution[1] ("**Constitution**") governs membership in the League and vests broad authority in the Board of Governors and the Executive Council to monitor and take necessary steps to protect the value of the Clubs as well as the integrity and public perception of the Clubs by carefully vetting proposed new members of the League ("**Members**") and ensuring Members' continued compliance with the Constitution and related rules, regulations and agreements.

4. The Debtor is in the process of marketing its assets, and in particular, the Team for sale pursuant to Section 363 of the Bankruptcy Code. The transfer of Team ownership is subject to the League's approval and right of first refusal. (*See* Report, § E below.) Following a status conference held on May 7, 2015, this Court issued the Order directing the OHL to submit a report to the Court that responds to a series of questions regarding the League's right of approval, the approval process (including the parties involved and the timetable for approval) and factors considered by the League in determining whether to approve a sale of the Team. The League's Report is set forth below.

---

[1] The Constitution is annexed as **Exhibit A** hereto.

2

**Report**

*A.    Description of OHL Approval Process (Order, ¶ 1(a))*

5.    The League's approval process is generally governed by the Constitution, which sets forth the general requirements and process for admission to the League. If a Member of the League wishes to transfer all or a controlling interest in its Club, that member is required to advise the League of its intention prior to taking any steps to transfer ownership of the Club. (Ex. A, § 3.7.1.) The Member must also submit an executed Request form acknowledging the League's approval and right of first refusal rights ("**Request**"). Sherwood Bassin, the holder of all the equity interests in Bassin Hockey (the Debtor's parent corporation), verbally indicated to the League his intent to sell the Team prior to the Petition Date. The Request typically is submitted after a Club has reached a definitive agreement with a proposed purchaser of the Club.

      *i.    Transfer of Ownership Only*

6.    To gain admission as a Member of the League, a prospective purchaser of the Team ("**Applicant**") must submit a written Transfer of Interest Application ("**Application**") to the League in the form subscribed by the League. (Ex. A, § 3.4.1.) The Application is to be submitted in "writing and received by the Commissioner at least sixty (60) days prior to the regularly scheduled Meeting at which the application is to be considered." (Ex. A, § 3.17.1.) Because of the time constraints imposed in this case, the Commissioner has agreed to seek a waiver of this 60-day period from the Board of Governors at the time an Application is submitted to the Board of Governors for consideration. The League has provided the prospective bidders made known to it with an Application package.

7.    The Application submitted to the League must include or be accompanied by the following:

    a.    An acknowledgment and agreement that upon and in consideration of election to membership, Applicant agrees to be bound by the Constitution, and any by-laws ("**By-laws**")[2] and regulations then and thereafter in effect, the policies and agreements of the OHL, and the agreements of the CHL, as they may be amended from time to time (Ex. A, §§ 3.4.1, 3.4.2.);

    b.    An acknowledgment of Applicant's willingness to pay the applicable fee for membership, and, a letter of credit or guaranty in form satisfactory to the League. The amount and form of credit enhancement is determined by the League in its sole discretion. (Ex. A, § 3.4.1.);

    c.    All transaction documents, including without limitation, the asset purchase agreement and any current or proposed financing agreements and related documents;

    d.    Information regarding Applicant's arrangement with the owner of the arena at which the Team plays its home games and the facility at which the Team conducts practices (if applicable) or an assignment of the lease agreement(s);

    e.    An acknowledgement and agreement that Applicant will assume, guarantee and ensure that Applicant will pay and discharge all debts and obligations to the League, players,[3] creditors, subscribers and all others, previously, currently and thereafter existing, and that Applicant will indemnify and hold the League harmless with respect to any such debts, except to the extent that such debts and obligations are satisfied in the Chapter 11 case from the proceeds of the sale of the Team;

    f.    If the Applicant is a business entity, copies of its articles of incorporation and by-laws, partnership or LLC agreement, as the case may be, certificate of status and biographies of shareholders, partners, members and/or officers as well as the names and addresses of those individuals who will be primarily responsible for the operations of the Team;

    g.    Information regarding the ownership structure following the transfer of the Team;

---

[2]    The operative terms of the By-laws have been replaced with Operating Manuals.

[3]    In particular, Applicant must agree to assume the Debtor's obligations to fund scholarships to current and former Team players who are entitled to such scholarships.

4

    h.    Applicant's financial statements, income tax returns for the two years prior to the proposed transfer, and the projected financial status of the proposed Member following a transfer of the Team;

    i.    Authorization for the OHL to conduct a credit check on those individuals and business entities involved;

    j.    Information regarding shareholders holding 5% or more of the equity interests in Applicant (including a banking reference and authority for the release of information) sufficient to allow the League to conduct a character review;

    k.    The names of any governmental branches, agencies, regulators or other parties or entities whose consent is required to complete the transfer;

    l.    A completed current police records check sufficient to disclose the criminal records, if any, of Applicant if he or she is a sole proprietor or any shareholder, partner or member holding an interest in Applicant if it is a business entity;

    m.    Such additional documents and information requested by the League to complete its consideration of the Application; and

    n.    A certified check, in an amount prescribed by the League from time to time (currently $15,000.00 Canadian Dollars), which will be used by the League to defray the legal and accounting fees and expenses incurred by the League in considering the Application. (Ex. A., § 3.4.2.).

8.    Finally, Applicant must execute an appropriate Non-Disclosure Agreement ("**NDA**") to obtain access to certain confidential and sensitive League documents. The League has provided an NDA to interested bidders.

    *ii.*    *Transfer of Venue*

9.    As noted above, the League strongly prefers that Applicant commit to keeping the Team in Erie, Pennsylvania and Applicant's position on this issue will be a significant factor in the League's approval analysis. However, if a current owner or potential buyer of a Club wishes to change the facility at which the team plays its home games—whether to a new geographic

5

location or to a new arena or facility within the same geographic location—the Applicant must also submit a Transfer of Venue Application ("**Venue Transfer Application**"), and such further and other documents required by the League prior to December 31st of the year preceding the proposed transfer of venue. (Ex. A, § 3.17.1.)

10. There are good reasons why a Venue Transfer Application requires this additional lead time for consideration. The schedule for games, including the venue sites of the games, must be fixed well in advance of the season in order to allow the Clubs to conduct their business planning for the next season, enter into the necessary vendor arrangements and sell tickets to the public. The schedule for the 2015-16 hockey season has already been fixed.

11. The Venue Transfer Application requires the Applicant to tender a check in the amount of $25,000.00 Canadian Dollars, which shall be applied to defray the legal, accounting and venue consultant costs incurred by the League in considering the Application. In addition to the Venue Transfer Application and in the case of a change of ownership, the items listed in paragraphs 7 and 8 above, Applicant must submit the following:

    a. Address of the current and proposed new offices of the team;

    b. Address of the current and proposed new arena and practice rink (if applicable) for home games and practices;

    c. Proposed date for commencement of games in proposed arena;

    d. Full plans and other information and photographs of proposed arena and practice rink if applicable;

    e. Any construction or renovation agreements for the proposed arena and practice rink;

    f. Lease of the current offices and current arena and a description of what is intended with respect to the existing leases;

    g. Lease of the proposed offices and proposed arena and practice rink (if applicable);

    h.    Information regarding ownership of the sites for proposed offices and proposed arena and practice rink;

    i.    Information regarding the location, neighborhood, and surroundings of the proposed arena and practice rink (if applicable);

    j.    Proposed change of team name, color scheme and other identifying or branding information;

    k.    Description of the impact, if any, on the home territory of any other Club;

    l.    Information regarding the proposed location and living arrangements for player families, including information regarding the location of the nearest schools;

    m.    Payment of a relocation fee established by the League; and

    n.    Such other information, documentation and plans as may be required by the League.

12. After the Application (and if applicable, the Venue Transfer Application) is submitted, the Commissioner and the League's Executive Council (a five Member subset of the Board of Governors)—with the assistance of legal counsel, financial and accounting advisors and, if applicable, venue consultants—review and analyze the Application(s) and any other information requested by the League and submitted by Applicant. The results of that analysis, along with the Application package submitted by Applicant, and the Commissioner's and the Executive Council's recommendation, is then submitted for consideration by the Board of Governors, which is composed of representatives of each of the Members. (Ex. A, Art. 5.)

13. Following review by the Board of Governors of the materials, the Members then vote on whether to waive the League's right of first refusal and approve the transfer of Team ownership. The approval may be effected by either (a) a vote of the Board of Governors taken at an in-person meeting (provided that ten (10) days' written notice of such meeting is given to

each Member), or (b) collection of mail ballots, executed by the Members and delivered to the League Commissioner. (Ex. A, § 3.10.) The consent of at least three-quarters (3/4s) of the Members is required for Applicant to be admitted as a new Member of the League. (Ex. A, § 3.5.1.)

B.   *List of All League Persons or Entities who Have a Role in the Approval Process (Order, ¶ 1(b))*

14.   As noted above, prior to submission to the Board of Governors, the Commissioner and the Executive Council are responsible, for reviewing and vetting an Application with the assistance of legal, financial and other advisors. When that review is completed, the Application package, along with the recommendation of the Commissioner and Executive Council, is submitted to the Board of Governors, which has the ultimate right and responsibility for determining whether to waive the right of first refusal and approve the transfer request(s). The names of the current Members (along with their team names and locations) are listed in Section 3.1 of the Constitution. (Ex. A, § 3.1.)

C.   *List of Factors That May Be Considered in the Approval Process (Order, ¶ 1(c))*

15.   To be admitted as a Member of the League, an Applicant must satisfy the League's standards for good character, reputation and financial wherewithal and responsibility. (Ex. A, § 3.3.) The League will also evaluate whether a particular Applicant is likely to (a) work cooperatively with the League and its Members; (b) adhere to and be bound by the League Constitution, Operating Manuals, regulations, policies and agreements, as well as any and all obligations of the League and the Clubs in connection with membership in the CHL; (c) observe and comply with (i) the decisions of the Commissioner in all matters within his jurisdiction, and (ii) the decisions, rulings and actions of the Board of Governors and Executive Council; (d) ensure that Applicant's contracts with third parties comply with the Constitution, Operating

8

Manuals, regulations, policies and agreements of the League; and (e) accept appropriate sanctions for violation of the terms and provisions of the Constitution, Operating Manuals, policies and regulations. (Ex. A, § 3.2.2(e).) In addition, an Applicant's willingness to assume the debts and liabilities of the Erie Otters—and in particular, the obligations of the Erie Otters to fund certain education costs of its former and current players—is another significant factor that will be considered by the League.

16. As indicated above, an Applicant's willingness to maintain the Team in Erie, Pennsylvania will be a significant factor considered by the League in deciding whether to approve the change in ownership and waive its right of first refusal. If an Application includes a venue transfer request, the new location must, at the very least, be within the League's geographic footprint and may not be within any other Member's Home Territory,[4] or within 80 kilometers of another Member's Home Territory unless such Member consents. (Ex. A, § 4.3.4.) The League will consider both the proposed new geographical area for relocation (whether to a location within or outside of the Erie, Pennsylvania area) and the impact of the venue change on the Team and other Clubs. Any such venue transfer must make economic sense for the Team and cannot have a material adverse impact on other Clubs. Among other things, factors such as population density, ease of access to the arena or facility and proximity of competing teams are considered.

D. *The Right of the Debtor, Broker and Potential Buyer to Participate in Approval Process (Order, ¶ 1(d))*

17. A Member initiates the approval process by advising the League of its intention to sell its Club, as it is required to do by the Constitution (Ex. A., § 3.7.1) and by submitting an

---

[4] The term "Home Territory" means with respect to any Member, "each Member['s] . . . exclusive territorial rights in the city or municipality or borough in which it is located as described in the Certificate of Membership, with respect to the playing of League games." (*Id.*, at § 4.1.3.)

9

executed Request form. As a Member of the League, the Debtor's representative on the Board of Governors is entitled to vote on the Application. There is no role in the approval process for Game Plan, LLC, the Debtor's broker.

18. An Applicant plays an active role in the approval process, compiling and submitting the necessary forms and other documents and interacting and responding to inquiries from the Commissioner, the Executive Council or Board of Governors during their analysis of the Application. An Applicant is permitted to make presentations to the Executive Council and the Board of Governors in support of its Application. An Applicant otherwise has no formal role in or rights with respect to the approval process.

D.    *OHL's Right to Approve Transfer of the Team (Order, ¶ 1(e))*

19. The League's approval rights are found in Article 3 of the Constitution. First, the Constitution requires any Member who desires to transfer all or a controlling interest in its Club to advise the League of its intention to do so prior to taking any such action. (Ex. A, § 3.7.1.)

20. Article 3 of the Constitution further provides that "no membership or interest therein (whether direct or indirect) may be sold, assigned, or otherwise transferred except with the consent of at least 3/4s of the Members." (Ex. A, 3.7.2(a).) In addition, the transferee must agree in writing that "it will at all times be bound by and comply with all the terms, provisions and conditions of this Constitution, the Rules of the League, its Regulations and all agreements entered into by the League then or thereafter in effect" and further must "agree in writing to assume or guarantee to pay all debts, liabilities and obligations of the transferor existing at the date of the transfer." (Ex. A, § 3.7.2 (b) and (c).)

21. The League's right of first refusal with respect to acquisition of the ownership of a Club is also found in Article 3 of the Constitution. Section 3.7.3 of the Constitution provides

that "[n]o membership may be sold or transferred without the League having the first right of refusal," and that "an agreement to sell or transfer a membership shall be made expressly subject to the first right of refusal of the League." (Ex. A, § 3.7.3.) Upon "receiving written notice of a Member's intention to sell or transfer, including all terms of the proposed sale or transfer, the League shall have thirty (30) days within which to elect to purchase or acquire the membership on the same terms and conditions set forth in such notice." (*Id.*)

E.    *Anticipated Timeline for Approval Process (Order, ¶ 1(f))*

23.    The timeline for review of an application is largely dependent on the timely submission of the required components of the Application by Applicant. Once a complete Application is received and no further information is required, the League should be able to make a decision on approval within 10-14 business days thereafter. The League recognizes that the orderly disposition of this proceeding requires it to make a prompt decision, and it is committed to doing so. The League notes, however, that its ability to act expeditiously decreases if the approval process extends into the month of July, a month when the parties involved in the approval process, including Member representatives, are often unavailable due to scheduled vacations.

F.    *Impediments to Completion of Approval Process Prior to Sale Approval (Order, ¶ 1(g))*

23.    If the stalking horse bidder is able to submit all the required components of the Application 10-14 business days prior to the date of the sale hearing, the League should be able to make the approval determination (or provide pre-approval subject to reasonable conditions) on or prior to the date of the sale hearing. However, the League does not believe there will be sufficient time for the League to consider and make approval determinations for competing bidders prior to the sale hearing because the required information will not be available for review

and analysis in time and the League does not have the resources to review applications by multiple bidders at the same time.

## Conclusion

24.     The League stands ready and willing to assist the Debtor and any potential buyers to complete the approval process, and also to provide any further information to the Court as requested.

Dated:  May 21, 2015
        Erie, Pennsylvania

                    QUINN, BUSECK, LEEMHUIS,
                    TOOHEY & KROTO, INC.


                    By: */s/ Lawrence C. Bolla*
                    Lawrence C. Bolla, Esquire
                    2222 West Grandview Boulevard
                    Erie, PA 16506-4508
                    PA ID#19679
                    Tel: (814) 833-2222
                    Fax: (814) 833-6753
                    lbolla@quinnfirm.com

                    and

                    Dianne F. Coffino, Esq.
                    State of New York Attorney Reg. No. 2296465
                    Covington & Burling LLP
                    The New York Times Building
                    New York, NY 10018
                    212-841-1043
                    dcoffino@cov.com

                    ***Co-Counsel to Ontario Hockey League***